UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| W.T., | ) |
| Plaintiff, | ) Civil Action No. 5:21–CV–178–CHB |
| v. | ) |
| | ) **MEMORANDUM OPINION AND** |
| UNITED STATES OF AMERICA, et al., | ) **ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the United States' Motion for Partial Dismissal, [R. 20]. Plaintiff W.T. responded, [R. 24], and the United States replied, [R. 25]. This matter is now ripe for review. For the reasons set forth below, the Court will grant the United States' Motion in part and deny it in part.

**I.   Background**

At all times relevant to this suit, W.T. was an inmate at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"). [R. 1, pp. 1–2, ¶ 1]. While at FMC Lexington, W.T. was required to complete the Residential Drug Abuse Program ("RDAP"), which was taught by Defendant Hosea Lee, a Bureau of Prisons ("BOP") correctional officer. *Id.* at 2, 6, 7, ¶¶ 3, 23, 30, 33. During Lee's supervision of W.T., he allegedly "leer[ed] at her, and began sexualizing questions out of the class textbook." *Id.* at 8, ¶ 38. From there, Lee's alleged behavior escalated, resulting in W.T. performing oral sex on Lee every two weeks. *Id.* at 8–9, ¶¶ 42, 47, 51. According to the Complaint, Lee instructed W.T. to keep their interactions a secret and convinced W.T. that she was the only inmate he interacted with in this manner. *Id.* at 9, ¶¶ 48–50, 52. Over time, however, W.T. "repeatedly heard" that Lee was sexually engaging with two

other inmates, A.B. and A.H., both of whom experienced herpes outbreaks. *Id.* ¶¶ 53–55. Lee's "predation upon W.T. lasted nearly a year." *Id.* at 10, ¶ 58.

Eventually, Lee was reported to the Office of Inspector General ("OIG") and investigated by the Federal Bureau of Investigation. *Id.* ¶¶ 56–57, 59–60. During the investigation, federal officials interviewed W.T., but she denied her interactions with Lee out of fear of retaliation. *Id.* ¶¶ 61–62. On November 25, 2019, the same day the BOP learned of Lee's sexual misconduct, Lee was transferred to a men's prison, where W.T. contends he was given "the ability to monitor W.T. and other inmates' phone calls and email messages." *Id.* at 12, ¶ 78; *see also* [R. 20, p. 4]. Consequently, W.T. did not feel safe talking to counsel or anyone else about what happened to her. *Id.* ¶ 79. Nonetheless, during a second interview with the OIG on January 22, 2020, W.T. admitted that Lee sexually assaulted her and subsequently consented to be tested for herpes. *Id.* ¶ 65; [R. 20, p. 4]. W.T.'s test came back positive for Herpes I and II — both of which require life-long treatment and were allegedly transmitted to her via Lee. [R. 1, pp. 10–11, ¶¶ 66, 69–70]. After her second interview, W.T. was transferred to the Federal Prison Camp in Alderson, West Virginia ("the Camp"), where she claims she was "punished because she reported Defendant Lee." *Id.* at 12, ¶¶ 80–81. W.T. alleges that the Camp denied her healthcare, medications, psychological care, and confidential access to counsel. *Id.* at 12–13, ¶¶ 82–85. Lee voluntarily resigned from his position with the BOP on January 25, 2020, and he currently faces criminal charges in the United States District Court for the Eastern District of Kentucky. [R. 20, p. 4 (citing R. 22–4, p. 3)]; *see also United States v. Hosea Lee*, Case No. 5:21–CR–084–DCR–MAS.

On June 25, 2021, W.T. filed this action against Lee and the United States, asserting three counts against the Defendants. [R. 1]. In Count I, W.T. asserts an Eighth Amendment cruel and unusual punishment claim against Lee. *Id.* at 13–14, ¶¶ 87–96. In Count II, W.T. asserts assault

and battery claims against the United States pursuant to the Federal Tort Claims Act ("FTCA"). *Id.* at 14–15, ¶¶ 97–102. Finally, in Count III, W.T. asserts additional FTCA claims in which she argues that the United States is responsible for negligently hiring, retaining, training, and supervising Lee. *Id.* at 15–18, ¶¶ 103–19.

Lee filed an answer in response to W.T.'s Complaint [R. 18], and thus, W.T.'s Eighth Amendment claim against him will proceed. That said, the United States filed a Motion for Partial Dismissal, arguing that the majority of W.T.'s claims against it should be dismissed. [R. 20]. First, the United States argues that W.T.'s assault and battery claims should be dismissed because Lee was not acting within the scope of his employment when he committed the alleged sexual assaults. *Id.* at 7–10; *see also* [R. 25, pp. 1–8]. Second, the United States argues that W.T.'s claim for negligent hiring and retention should be dismissed because the Court lacks subject matter jurisdiction over the claim since W.T. failed to administratively exhaust the claim, as required by the FTCA, prior to filing suit in this Court. [R. 20, pp. 11–14]; *see also* [R. 25, pp. 8–9]. Third, the United States contends that the Court lacks subject matter jurisdiction over W.T.'s claims of negligent supervision based on the discretionary function exception to the FTCA. [R. 20, pp. 14–18]; *see also* [R. 25, pp. 9–15]. Notably, at this time, the United States does not move to dismiss W.T.'s negligent training claim. [R. 20, p. 6]. W.T. filed a Response in opposition to the United States' Motion. [R. 24], and the United States filed a Reply, [R. 25]. Thus, the United States' Motion is now ripe for review.

II.    Analysis

The Court will grant the United States' Motion in part and deny it in part. The Court will dismiss W.T.'s assault and battery claims against the United States because Lee was not acting within his scope of employment during the events in question. The Court, however, will allow

3

W.T. to proceed on her negligent hiring and retention claim because a lack of subject matter jurisdiction has not been demonstrated. In addition, the Court will not dismiss W.T.'s negligent supervision claim because the Court finds that discovery will assist it in determining the applicability of the discretionary function exception.

### A. W.T.'s Assault and Battery Claims

As a sovereign entity, the United States is generally immune from claims against it. *See Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 21–5801, 2022 U.S. App. LEXIS 13397, at *17 (6th Cir. Mar. 11, 2022) ("The United States, as a sovereign entity, is immune from suit unless it consents to be sued."). However, the FTCA "was designed primarily to remove the sovereign immunity of the United States from suits in tort." *Levin v. United States*, 568 U.S. 503, 506 (2013) (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)). Indeed, the FTCA allows certain suits against the United States to go forward, including some claims for intentional torts, like assault and battery, committed by a law enforcement officer acting within the scope of his or her employment. *See id.* (quoting 28 U.S.C. § 1346(b)(1)) ("The Act gives federal district courts exclusive jurisdiction over claims against the United States 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment."); *see also* 28 U.S.C. § 2680(h) (the intentional tort exception); *Millbrook v. United States*, 569 U.S. 50, 52–57 (2013) (discussing the various provisions of the FTCA at length, including 28 U.S.C. § 2680(h)).

To determine whether an alleged act or omission was committed within the scope of one's employment, the Court must apply the law of the state in which the act or omission occurred. 28 U.S.C. § 1346(b)(1). Here, the alleged sexual assaults occurred in Kentucky, *see* [R. 1, pp. 1–2, ¶

1; R. 20, p. 8], and both parties agree that Kentucky law applies to determine whether Lee's actions were within the scope of his employment.

Under Kentucky law, "in the area of intentional torts … [the] focus[] [is] on the motive of the employee in determining whether he or she was acting within the scope of employment." *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 566 (6th Cir. 2008) ("In *Patterson v. Blair*, the Kentucky Supreme Court clarified that a court must 'focus on the motive of the employee in determining whether he or she acted within the scope of the employment.'").[1] Generally, an employee acts within the scope of his employment when his "purpose, however misguided, is wholly or in part to further the master's business." *Patterson*, 172 S.W.3d at 369 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* 505 (5th ed. 1984)). In contrast, an employee has "departed from his employment" when he "acts purely from personal motives … which [are] in no way connected with the employer's interests[.]" *Id.* (quoting *Prosser and Keeton* at 506). Thus, "to be within the scope of its employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." *Flowers*, 513 F.3d at 567 (quoting *Osbourne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000)).

For the purposes of its Motion, the United States concedes that Lee is a law enforcement officer for purposes of 28 U.S.C. § 2680(h). *See* [R. 20, p. 8 n.5]. However, it argues that Lee's alleged sexual assaults were not intentional torts committed within the scope of his employment. *Id.* at 7. In fact, the United States argues that Lee's conduct "served no purpose of the United States" and that his "only motivation … was to serve his own deviant, personal gratification or

---

[1] In her Response, W.T. relies heavily on the four-part test articulated in *Coleman v. United States*, 91 F.3d 820, 824 (6th Cir. 1996). *See* [R. 24, pp. 6–7]. However, in accordance with *Patterson*, 172 S.W.3d at 369, and *Flowers*, 513 F.3d at 566, the Court will focus only on Lee's purpose or motive.

sexual proclivities." *Id.* at 10. W.T. counters that the assault and batteries committed by Lee were within the scope of his employment because Lee furthered the BOP's interests by "keeping prisoners in line and moving them through a federal drug rehabilitation program." [R. 24, pp. 6, 9]. In other words, the assault and battery committed by Lee "achiev[ed] his employer's mission" by "manag[ing] the inmate-students under his supervision" because if they had resisted Lee, they would have been subjected to numerous punishments. *Id.* at 6–7. The Court, however, agrees with the United States for several reasons.

    First, case law from Kentucky, the Sixth Circuit Court of Appeals (applying Kentucky law), and this district have repeatedly held that sexual assault is not within the scope of one's employment. *See Flechsig v. United States*, 991 F.2d 300, 302–03 (6th Cir. 1993) (quoting *Se. Greyhound Lines v. Harden's Adm'x*, 281 Ky. 345, 349 (Ky. 1940)) (where the Court held that a BOP officer acted outside the scope of his employment when he sexually assaulted a FMC inmate at his apartment and stated that, "as a general rule it is not within the scope of a servant's employment to commit an assault upon a third person and the master is not liable for such an assault though committed while the servant was about the master's business."); *Bond v. Carter Cty.*, No. 14–140–DLB–EBA, 2015 U.S. Dist. LEXIS 74308, at *12–13 (E.D. Ky. June 9, 2015) ("Deputy Morrison decided to forsake the interests of the Sherriff's Office for his own personal gratification when he told Plaintiff [] that she would be arrested unless she performed oral sex on him."); *Am. Gen. Life & Accident Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002) ("Ordinarily, an employer is not vicariously liable for an intentional tort of an employee not actuated by a purpose to serve the employer but motivated, as here, solely by a desire to satisfy the employee's own sexual proclivities."); *Osborne*, 31 S.W.3d at 915 (where the court thought it "absurd" to

6

conclude that a priest acted within the scope of his employment when he committed adultery with a parishioner).

Recently, a court in this district held no differently when it was presented with an argument similar to that of W.T.'s. *See B.A. v. United States*, No. 5:21–106–DCR, 2021 U.S. Dist. LEXIS 196099 (E.D. Ky. Oct. 12, 2021). In *B.A.*, the plaintiff-inmate asserted assault and battery claims against the United States after she was sexually assaulted by a correctional officer at FMC Lexington. *Id.* at 3. The plaintiff argued that the officer's alleged conduct was within the scope of his employment because it furthered the BOP's interests because it was a tool of control to secure a completed work task and "compliant inmates." *Id.* at 5. The court, however, rejected the plaintiff's argument, reasoning, among other things, that "Kentucky courts and the Sixth Circuit have concluded that this type of alleged conduct is not an act that furthers the interests of the BOP." *Id.* at 6–8 (collecting cases). Given the case law in favor of the United States' argument, and the striking similarities between *B.A.* and this case, the Court can conclude no differently here. *See L.C. v. United States*, No. 5:21–CV–00124–GFVT, 2022 U.S. Dist. LEXIS 72348, at *8–9 (E.D. Ky. Apr. 19, 2022) (holding that Defendant Lee's alleged conduct was not within his scope of employment).

Further, it would be erroneous for the Court to conclude that Lee's conduct served BOP interests when such conduct was in direct violation of BOP policy,[2] and now serves as the grounds for Lee's criminal charges. *See id.* at 8–9; *Houghton v. United States*, No. 6:15–CV–90–DCR–HAI, 2016 U.S. Dist. LEXIS 128921, at *15 (E.D. Ky. Aug. 9, 2016), *adopted by* 2016 U.S. Dist. LEXIS 128921 (E.D. Ky. Sept. 20, 2016)) (holding that conduct in violation of BOP

---

[2] "No employee shall engage in, or allow another person to engage in, sexual behavior with an inmate. There is never any such thing as *consensual* sex between staff and inmates." United States Department of Justice, Bureau of Prisons Program Statement 3420.11, https://www.bop.gov/policy/progstat/3420_011.pdf (last visited June 8, 2022) (emphasis in original); *see also* [R. 1, p. 4, ¶ 14].

7

Policy cannot be construed as "the intent to further the interests of the employer"); *B.A.*, 2021 U.S. Dist. LEXIS 196099, at *8 ("The fact that [defendant's] alleged conduct violates BOP policy bolsters the conclusion that it does not serve the interests of the BOP."); *L.C.*, 2022 U.S. Dist. LEXIS 72348, at *8–9 (considering Lee's violation of BOP policy and criminal charges when determining he acted outside the scope of his employment); *see also United States v. Hosea Lee*, Case No. 5:21–CR–084–DCR–MAS.

The Court is also unconvinced by W.T.'s argument regarding *Millbrook v. United States*, 569 U.S. 50 (2013). Specifically, W.T. relies on *Millbrook* to illustrate that the United States has already conceded that a BOP employee acted within the scope of his employment when he sexually assaulted an inmate. *See* [R. 24, pp. 9–11]. W.T.'s reliance on *Millbrook*, however, is misplaced, for several reasons. First, in *Millbrook*, such concession was made in accordance with Pennsylvania law. 569 U.S. at 55 n.3; *see also* 28 U.S.C. § 1346(b). Here, as stated above, Kentucky law applies, and Kentucky courts, the Sixth Circuit (applying Kentucky law), and this district have repeatedly held that sexual assaults are not within the scope of employment. *See B.A.*, 2021 U.S. Dist. LEXIS 196099, at *6–7; *Flechsig*, 991 F.2d at 302–03; *Bond*, 2015 U.S. Dist. LEXIS 74308, at *12–13; *Am. Gen. Life & Accident Ins. Co.*, 74 S.W.3d at 692; *Osborne*, 31 S.W.3d at 915; *L.C.*, 2022 U.S. Dist. LEXIS 72348, *8–9. Second, while the circumstances in *Millbrook* centered around the sexual assault of an inmate by a BOP employee, the issue before the Supreme Court was not whether the sexual assault fell within the scope of employment. 569 U.S. at 51. In fact, the Court explicitly chose not to address whether the BOP employee's alleged conduct fell within the scope of his employment. *Id.* at 55 n.3. Finally, while the United States conceded in *Millbrook* that the correctional officer was acting within the scope of his employment when he sexually assaulted the plaintiff, *see* 569 U.S. at 55 n.3, no such concession

8

is being made here. Rather, the United States vigorously contends that, under Kentucky law, Lee's sexual assault of W.T. was outside his scope of employment. *See* [R. 20, pp. 7–10; R. 25, pp. 1–7].

Lastly, W.T. argues that it would be "premature" to dismiss her assault and battery claims prior to discovery. [R. 24, p. 11]. However, this argument is also unavailing. "Whether an employee was acting within the scope of his employment is *a question of law, not fact*, made in accordance with the law of the state where the conduct occurred." *Landham v. Taylor*, 68 F. App'x 608, 610 (6th Cir. 2003) (emphasis added); *see also B.A.*, 2021 U.S. Dist. LEXIS 196099, at *4–11; *L.C.*, 2022 U.S. Dist. LEXIS 72348, *10. Thus, dismissal, prior to discovery, is not premature. Accordingly, W.T.'s assault and battery claims against the United States are dismissed.

### B. W.T.'s Negligent Hiring and Retention Claim

Next, the United States contends that W.T.'s negligent hiring and retention claim should be dismissed for lack of jurisdiction because W.T. failed to administratively exhaust the claim, as required by the FTCA, *see* 28 U.S.C. § 2675(a), prior to filing suit in this Court. *See* [R. 20, pp. 11–14]; *see also* [R. 25, pp. 8–9]. The United States' jurisdictional argument, however, is premature.

It is true that before a plaintiff files a lawsuit against the United States under the FTCA, she must first present "the claim to the appropriate Federal agency" and then wait for either the agency to deny the claim in writing or for six months to pass without a response from the agency. 28 U.S.C. § 2675(a). Moreover, in presenting the claim to the agency, the plaintiff must state a claim for money damages in a specific amount because she cannot generally institute a

9

FTCA action "for any sum in excess of the amount of the claim presented to" the agency. 28 U.S.C. § 2675(b).

Here, the United States acknowledges that W.T. completed and filed with the BOP multiple SF-95 Forms, the form normally used to administratively exhaust claims against the United States. Indeed, the United States attached W.T.'s completed SF-95 Forms to its Motion. *See* [R. 22–1 and 22–2]. However, the United States argues that a review of the forms shows that "neither of W.T.'s administrative claims submitted to BOP sufficiently alert the agency of her cause of action for negligent hiring or retention of Lee." [R. 20, p. 13]. Thus, the United States contends that the Court lacks subject matter jurisdiction over the claim. *Id.* at 11–14.

Setting aside the content of W.T.'s SF-95 Forms for the moment, the United States' jurisdictional argument is at least premature. That is because the United States has not addressed recent case law from the Sixth Circuit which suggests that the FTCA's exhaustion requirements are not actually jurisdictional.[3] In *Copen v. United States*, 3 F.4th 875, 882 (6th Cir. 2021), the Sixth Circuit held that the FTCA's so-called "sum certain" exhaustion requirement, found in § 2675(b), is not jurisdictional, but, instead, a "mandatory claims-processing rule." Shortly thereafter, the Sixth Circuit extended *Copen* to apply to § 2675(a), the exhaustion provision at issue in this case. *See Kellom v. Quinn*, No. 20–1003/1222, 2021 U.S. App. LEXIS 26749 (6th Cir. Sept. 3, 2021). Indeed, in *Kellom*, the Sixth Circuit held that § 2675(a) is not jurisdictional, but a claim-processing rule, and thus, failure to satisfy it does not deprive a court of jurisdiction. *Id.* at 9.

Although *Copen* and *Kellom* were both decided before the United States filed its Motion for Partial Dismissal, the United States failed to address either case in its Motion. To be sure, the

---

[3] A rule is jurisdictional if "it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).

10

Court recognizes that *Copen* dealt with a different aspect of the FTCA's exhaustion requirement than the one at issue here and that *Kellom* is an unpublished decision. Nonetheless, the cases, at a minimum, undercut the United States' present lack of jurisdiction argument, and the United States' failure to discuss the cases in its Motion renders its argument at least premature. Thus, the Court will deny, without prejudice, the United States' request for dismissal of W.T.'s negligent hiring and retention claim. The United States may later reassert its argument, but, if it does so, it should address *Copen*, *Kellom*, and any other decision applicable to the exhaustion issue.[4]

### C. W.T.'s Negligent Supervision Claim

Lastly, the United States contends that W.T.'s negligent supervision claim should be dismissed based on the discretionary function exception to the FTCA. *See* [R. 20, pp. 14–18; R. 25, pp. 9–15]. As the Sixth Circuit has explained:

> To determine whether the discretionary function exception applies to the government conduct at issue, we apply a two-part test. The first prong of the test requires that we determine whether the acts at issue are discretionary in that they involve an element of judgment or choice. Where a policy provides mandatory instruction, the discretionary function exception does not apply. If the conduct does involve an element of judgment or choice, we must proceed to the second prong: whether that judgment is of the kind that the discretionary function exception was designed to shield.

*Anestis v. United States*, 749 F.3d 520, 528–29 (6th Cir. 2014) (internal citations and quotation marks omitted).

While the United States seeks immediate dismissal of W.T.'s negligent supervision claim on the basis of the discretionary function exception, the Court will deny that request without prejudice at this early, pre-discovery stage in the litigation. As the Court has repeatedly pointed

---

[4] If the United States reasserts its argument, it should also be prepared to discuss, in more detail, why W.T.'s revised SF-95 Form, *see* [R. 22–2], was not sufficient to constitute exhaustion of a negligent retention claim. After all, in that submission, W.T. specifically alleges that she "was sexually assaulted multiple times by … Lee at FMC Lexington," and "[d]espite knowledge of … Lee's actions and patterns of conduct, BOP failed in its duty to … properly investigate *and address* his sexually abusive conduct …" *Id.* at 3 (emphasis added).

out, an argument based on the discretionary function exception amounts to a factual attack on jurisdiction, which necessarily involves weighing conflicting evidence. *See, e.g., Parker v. United States*, No. 11–CV–176–ART, 2012 WL 2414887, at *2–3 (E.D. Ky. June 26, 2012); *Ceballos v. United States*, No. 11–CV–021–ART, 2011 WL 5855290, at *2 (E.D. Ky. Nov. 22, 2011). Moreover, the United States acknowledges in its motion that the Court "'has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." [R. 20, p. 7 (quoting *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014)]. The Court will exercise that broad discretion by allowing this matter to proceed to discovery. Ultimately, the discovery process should assist the Court in determining whether the discretionary function exception applies and, if so, whether W.T. can nevertheless proceed with her claim by demonstrating that the BOP was aware of a "specific and immediate threat" against her. *See Parker*, 2012 WL 2414887, at *3 (explaining that "[t]he discretionary-function exception may not apply where federal officials are aware of a specific and immediate threat to an inmate's safety").

### III.   Conclusion

For the reasons provided above, the Court will deny in part and grant in part the United States' Motion. Accordingly, **IT IS HEREBY ORDERED** as follows:

1. The Motion for Partial Dismissal filed by Defendant United States **[R. 20]** is **DENIED in part** and **GRANTED in part**.

    a. The Motion is **DENIED** without prejudice as to Count III's negligent hiring and retention claim and negligent supervision claim.

      b. The Motion is **GRANTED** as to Count II's assault and battery claims.

This the 3rd day of August, 2022.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY